HOWARD N. MADRIS (State Bar No. 157691)
LAW OFFICE OF HOWARD N. MADRIS, A P.C.
424 S. Beverly Drive
Beverly Hills, California 90212
Telephone: (310) 277-0757
Facsimile: (310) 975-6757
hmadris@madrislaw.com

and

MARK A. SERLIN (State Bar No. 122155)
SERLIN & WHITEFORD, LLP
813 F Street, 2d Floor
Sacramento, CA 95814
Telephone: (916) 446-0790
Facsimile: (916) 446-0791
Email: mserlin@globelaw.com

Attorneys for Plaintiff/Cross-Defendant DRMG, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SUPERIOR ACQUISITIONS, INC.,<br><br>Debtor. | Adv. Proc. No. 11-1034<br><br>Main Case No. 10-13730<br><br>Chapter 11 |
| DRMG, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>LINDA S. GREEN, solely in her capacity as Chapter 11 Trustee for Superior Acquisitions, Inc.; and SUPERIOR ACQUISITIONS, INC.,<br><br>Defendants. | **PLAINTIFF/CROSS-DEFENDANT DRMG, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS ALL OF DEFENDANT/CROSS-COMPLAINANT CHAPTER 7 TRUSTEE'S COUNTERCLAIMS PURSUANT FED. R. CIV. PROC 12(B)(6), OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. PROC. 12(E)**<br><br>Date: May 6, 2011<br>Time: 10:00 a.m.<br>Santa Rosa Courtroom |

| | |
|---|---|
| 1 | LINDA S. GREEN, Chapter 11 Trustee of the Estate of Superior Acquisitions, Inc.; |
| 2 | Counter-claimant, |
| 3 | |
| 4 | v. |
| 5 | DRMG, LLC, a California limited liability company; |
| 6 | |
| 7 | Counter-defendant. |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF ARGUMENT ..................................................................................... 2

III. BACKGROUND FACTS .............................................................................................. 3

IV. EACH AND EVERY COUNTERCLAIM MUST BE DISMISSED BECAUSE AS A MATTER OF LAW, DRMG WAS LAWFULLY ENTITLED TO COLLECT THE RENTS POST-PETITION ........................................................................................................... 3

V. A RULE (12)(B)(6) MOTION TO DISMISS SHOULD BE GRANTED WHERE THE CLAIMS ARE BASED ON CONCLUSORY ALLEGATIONS OF WRONGDOING AND ARE DEVOID OF SUPPORTING LEGAL FACTS ................................................................ 4

VI. COUNTERCLAIM NOS. 1 & 2 (FOR VIOLATING THE ONE-ACTION RULE) MUST FAIL BECAUSE THE TRUSTEE HAS NOT PLEADED THAT THERE WAS AN "ACTION" OR A VIOLATION OF THE "SECURITY FIRST" PRINCIPLE ............................................. 5

    A. There are Only Two Ways a Creditor Can Violate the "One Action" Rule: By Bringing a Judicial Action on the Underlying Debt or By Violating the Security First Principle. ......... 5

    B. The Trustee Does Not and Cannot Allege Facts that DRMG Committed an "Action" or Violated the Security First Principle. ............................................................................. 6

    C. The Trustee Has No Legally Cognizable Claim Under Sec. 726(a), Because DRMG's Security Interests in the Realty and Rents are Set Forth in One Recorded Document. ........... 8

    D. Alternatively, Counterclaims 1 and 2 Must Fail Because of the Trustee's On-Going Demand for Return of the Rents. ...................................................................................... 8

VII. COUNTERCLAIM NO. 3 (FOR CIVIL CONTEMPT) MUST FAIL BECAUSE THE TRUSTEE HAS NOT PLEADED FACTS THAT ESTABLISH CONTEMPT ....................... 9

VIII. COUNTERCLAIM NOS. 4 AND 5 (FOR TURNOVER AND AVOIDANCE OF POSTPETITION TRANSFERS) MUST BE DISMISSED, OR ALTERNATIVELY, THE

TRUSTEESHOULD BE REQUIRED TO MAKE A MORE DEFINITE STATEMENT AS TO COUNTERCLAIM NO. 5 .................................................................................................. 11

IX. CONCLUSION ........................................................................................................ 12

TRUSTEESHOULD BE REQUIRED TO MAKE A MORE DEFINITE STATEMENT AS TO COUNTERCLAIM NO. 5 .................................................................................................. 11

IX. CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)..................................................................4, 5

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) .........................................................4, 5

Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 36, 39 (3rd Cir. 1993) ................10

In re Amaravathi Ltd. P'ship., 416 B.R. 618 (Bankr. S.D. Tex. 2009) ....................................10

In re Bean, 252 F. 3d 113, 117 (2nd. Cir. 2001).....................................................................12

In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002).................................................................9

In re Dyer, 322 F. 3d 1178, 1192 (9th Cir. 2003)................................................................9, 10

In re Jason Realty Ltd. P'ship, 59 F.3d 423, 427 (3rd Cir. 1995)............................................10

In re Kristal, 758 F.2d 454, 455 (9th Cir. 1985)........................................................................6

In re Loco Realty Corp., Case No. 09-11785 (Bankr. S.D.N.Y 2009, not for publication) .........10

In re Mount Pleasant Ltd. P'ship, 144 B.R. 727 (Bankr. W.D. Mich. 1992) ............................10

In re Northwest Commons, Inc., 136 B.R. 215, 220 (Bankr. E.D. Mo. 1991) ..........................10

In re South Pointe Associates, 161 B.R. 224 (Bankr. E.D. Mo. 1993)....................................10

In re Sunnymead Shopping Center Co., 178 B.R. 809, 816 (9th Cir. B.A.P. 1995)...................6

In re Woodmere Investors Ltd P'ship, 178 B.R. 346, 360 (Bankr. S.D. N.Y. 1995) ................10

Matter of Century Investment Fund VII Limited P'ship, 937 F.2d 373, 375 (7th Cir. 1991) .......10

Matter of Coastal Group, Inc., 100 B.R. 177 (Bankr. D. Del. 1989)........................................10

Pacific Nat'l Bank v. Wozab, 51 Cal.3d 991 (Cal. 1990)..................................................5, 6, 9

R.T.C. v. Bayside Developers, 43 F.3d 1230, 1242, 1243 (9th Cir. 1994)................................6

**Statutes**

Civil Code Sec. 726(a).......................................................................................................2, 5, 6

Sec. 2938(c) .............................................................................................................................7

Sec. 2938(e)(2).....................................................................................................................7, 8

Sec. 362(a) .............................................................................................................................10

Section 549.............................................................................................................................11

**Rules**

Rule 12(b)(6).................................................................................................4

Rule 12(e).....................................................................................................5

**TO THE HONORABLE ALAN JAROSLOVSKY, U.S. BANKRUPTCY JUDGE, THE CHAPTER 11 TRUSTEE, DEBTOR, AND ALL OTHER INTERESTED PARTIES:**

DRMG, LLC hereby files this Memorandum of Points and Authorities in support of its motion to dismiss all of the counterclaims ("Counterclaims") filed by the Chapter 7 Trustee ("Trustee"), or in the alternative, for a more definite statement.

I.

## INTRODUCTION

DRMG filed its Complaint on February 10, 2011– as requested by the Court – to obtain a determination as to who owns the rents received post-petition (as well as the right to future rents) from Debtor's tenant, the California Department of Motor Vehicles ("DMV"), at two Debtor-owned properties (collectively, "Rents"). The Rents include over $90,000 that the DMV sent to DRMG post-petition in October and November, 2010.[1] DRMG never solicited the Rents post-petition; the DMV just sent them.

DRMG has in all times made good faith efforts to resolve the Rents ownership issue. The Rents have been in DRMG's co-counsel Mark Serlin's law office trust account since October of 2010. In October, November and December of 2010, Mr. Serlin repeatedly advised Debtor's counsel that DRMG was holding the Rents, and urged Debtor (who was operating its business without authority to use cash collateral) to obtain authority to use cash collateral so DRMG and Debtor could address the Rents issue. Yet it was not until January 26, 2011 – four months into the case -- that Debtor first demanded a turnover of the Rents. That was the day before the hearing on DRMG's motion to convert the case to Chapter 7 – a hearing at which the Court appointed the Trustee, due to Debtor's rampant cash collateral violations.

On February 4, 2011, the Trustee first demanded a turnover of the Rents in Mr. Serlin's trust account. Six days later, on February 10, 2011, DRMG filed its Complaint, which is primarily for declaratory relief as to who owns the Rents. DRMG emailed the Trustee's counsel

---

[1] Indeed, three quarters of the Rents were for pre-petition months that the DMV paid post-petition due to the State budget crisis.

the next day, requesting that the parties discuss settlement or expedited adjudication of the Rents issue. The Trustee refused to discuss the matter.[2]

In filing its Complaint, DRMG did exactly what the Court advised it to do. At the January 7, 2011 hearing on Debtor's initial cash collateral motion, DRMG raised the issue that it was assigned the Rents pre-petition. DRMG also filed papers before the hearing wherein it stated that the Rents were in Mr. Serlin's trust account pending a determination as to who owned them. The Court stated at the January 7th hearing that for the Court to adjudicate the ownership issue, DRMG would need to commence an adversary proceeding.

## II.

## SUMMARY OF ARGUMENT

The Trustee's Counterclaims – for violation of the one action rule, contempt of Court, etc., have now put the Adversary Proceeding on steroids. However, there is no basis for any of the Counterclaims – regardless of how this Court may adjudicate the issue of who owns the post-petition Rents.

First and foremost, DRMG's receipt of Rents from the DMV could not have violated the "one action" rule of Civil Code Sec. 726(a). A violation of the one action rule can only occur where the lender recovered the funds pursuant to a judicial proceeding (the "action" requirement), or from property of the borrower not given the lender as security (the "security first" principle). However, the Counterclaims do not allege that DRMG received the Rents via a judicial proceeding. Further, even if DRMG did not own the Rents post-petition because the Bankruptcy Code preempts Sec. 2938 (which DRMG denies), DRMG undeniably held a security interest in the Rents as cash collateral. The Trustee has not pleaded any facts to the contrary. Therefore, as a matter of law, DRMG did not violate the "security first" principle either.

The Trustee's Counterclaim for civil contempt against DRMG and its counsel must fail because, for a finding of contempt, the Court must find that there was a violation of a "definite

---

[2] The Trustee's lead counsel's email response that day was that if DRMG doesn't stop "jamming" him and the Trustee, he is going to "dream up ways to sue your client [DRMG], which is on my agenda for my 3:00 a.m. quiet time tonight."

order" of the Court. Here, it is highly debatable whether DRMG violated the stay by receiving the Rents post-petition. Numerous courts, including the Third and Seventh Circuit Courts of Appeals, have held that where a lender enforced its rights pre-petition and acquired ownership of rents (as DRMG did), the borrower's bankruptcy filing does not re-vest the debtor with ownership. Moreover, DRMG has been holding the Rents in trust and commenced the adversary proceeding at the Court's suggestion. At most, there is a good faith dispute as to ownership of the Rents, such that the contempt Counterclaim must thus be dismissed as a matter of law.

## III.

## BACKGROUND FACTS

DRMG, as successor-in-interest after various loan assignments, holds two recorded Deeds of Trust with absolute assignment of rents provisions contained therein (Complaint, Ex. "D" is for the Fall River Mills property and "E" is for the Lakeport property), as well as a separate "Absolute Assignment of Rents" for each property (Complaints, Exs. "F" and "G").

DRMG has alleged that pre-petition, Debtor defaulted under the loans (Complaint, pars. 19 & 20); that in or about October of 2009, DRMG's predecessor Umpqua Bank sent out demand letters under Sec. 2938 to the DMVs and Debtor, to enforce its rights in present and future Rents (Complaint, pars. 21 and 22), and that (in addition to receiving rents from the DMV pre-petition), DRMG received Rents post-petition from the DMV. Three quarters of the funds that DRMG received from Debtor Post-Petition were on account of Rents that accrued pre-petition, but which the DMV had not paid due to the state budget crisis. These Rents are all in the trust account of DRMG's co-counsel Mr. Serlin, who is holding the funds in trust for whomever this Court determines owns them (Complaint, pars. 29-32).

## IV.

## EACH AND EVERY COUNTERCLAIM MUST BE DISMISSED BECAUSE AS A MATTER OF LAW, DRMG WAS LAWFULLY ENTITLED TO COLLECT THE RENTS POST-PETITION

This issue has been fully brief and set for hearing on April 1, 2011, at which time the Court will hear the Trustee's motion to dismiss DRMG's Complaint ("Trustee's Motion to

Case: 11-01034   Doc# 10   Filed: 03/24/11   Entered: 03/24/11 15:22:10   Page 9 of 18

Dismiss"). On March 17th, DRMG filed its detailed brief (Adv. Docket No. 7) in opposition to the Trustee's Motion to Dismiss ("DRMG's Assignment of Rents Brief"). As explained therein, DRMG owned the Rents the instant before Debtor's bankruptcy petition, as the service of the Sec. 2938 demand letters constituted the enforcement step under the statute as to which DRMG acquired ownership. Further, as also detailed therein, the Bankruptcy Code did not and cannot allow Debtor to re-acquire the right to collect Rents. The Third and Seventh Circuit Courts of Appeals, and a number of bankruptcy courts have so ruled. DRMG's Assignment of Rents Brief (without exhibits) is attached hereto as Exhibit "A," and the arguments therein are fully incorporated herein by reference.

If DRMG prevails at the hearing on April 1, 2011 and is determined to be the owner of the Rents, there clearly is no merit to any of the Counterclaims. The below arguments are thus based, for the sake of argument only, on the Court determining at the April 1st hearing that the estate owns the Rents.

V.

**A RULE (12)(B)(6) MOTION TO DISMISS SHOULD BE GRANTED WHERE THE CLAIMS ARE BASED ON CONCLUSORY ALLEGATIONS OF WRONGDOING AND ARE DEVOID OF SUPPORTING LEGAL FACTS**

To survive a motion to dismiss, a claim in a complaint (or counterclaim) must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Rule 12(b)(6) mandates the dismissal of a claim based solely on legal conclusions. "[T]e tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949 (quoting Twombly). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Rather, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555, 556, 557).[3]

# VI.
# COUNTERCLAIM NOS. 1 & 2 (FOR VIOLATING THE ONE-ACTION RULE) MUST FAIL BECAUSE THE TRUSTEE HAS NOT PLEADED THAT THERE WAS AN "ACTION" OR A VIOLATION OF THE "SECURITY FIRST" PRINCIPLE

**A.  There are Only Two Ways a Creditor Can Violate the "One Action" Rule: By Bringing a Judicial Action on the Underlying Debt or By Violating the Security First Principle.**

Civil Code Sec. 726 states in pertinent part:

> There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter.

Cal.Civ.Proc.Code § 726(a) (2011).

In the seminal case of Pacific Nat'l Bank v. Wozab, 51 Cal.3d 991 (Cal. 1990), the California Supreme Court held that there are two components of Sec. 726(a): namely, the "one action" rule and the "security first" principle. In Wozab, the secured creditor bank collected funds as a setoff from its borrower's unpledged deposit account at the bank. The Court held that the setoff did not violate the "one action" rule because the collection of the account was not an "action." The Supreme Court held that an "action" can only be a "proceeding in a court of justice." The Court added: "No court had anything to do with the setoff... It was therefore not an action ... The statute's plain meaning permits no other conclusion." Wozab, 51 Cal.3d at 998.

The Wozab Court then held that the creditor violated the "security first" principle. The Court held that the principle requires a creditor with a security interest in realty "to proceed against the security before enforcing the underlying debt." Wozab, 51 Cal.3d at 999. By seizing

---

[3] Alternatively, Rule 12(e) provides in part that a party may move for a more definite statement as to a pleading that "is so vague or ambiguous that the party cannot reasonably prepare a response."

Case: 11-01034    Doc# 10    Filed: 03/24/11    Entered: 03/24/11 15:22:10    Page 11 of 18

the unpledged deposit account instead of foreclosing on its real property collateral, the bank violated the rule.

It is hornbook law that to violate the security first principle, the lender must have sought to collect from the borrower's **non-pledged** assets. The Ninth Circuit has made this clear:

> A creditor may violate the "security-first" rule of § 726 by collecting from the debtor's non-collateral general assets prior to looking to its collateral. Wozab, 51 Cal.3d at 999-1000, 800 P.2d at 561-62, 275 Cal.Rptr. at 205-06. In this case [Bayside], the Bank did not get paid with non-collateral before being paid with collateral because the townhouses that were sold, the sale proceeds and the model home furniture were all part of the Bank's collateral. . .
>
> Bayside appears to argue that the Bank violated § 726 by collecting on its "additional" collateral before collecting on its "primary security." . . . [However] California law imposes no such requirement.

R.T.C. v. Bayside Developers, 43 F.3d 1230, 1242, 1243 (9th Cir. 1994). See also, In re Sunnymead Shopping Center Co., 178 B.R. 809, 816 (9th Cir. B.A.P. 1995) (holding the security first rule was not violated: "The rents, issues or profits constitute 'additional collateral;' thus the creditor has not collected from the debtor's noncollateral general assets prior to being paid with collateral"); In re Kristal, 758 F.2d 454, 455 (9th Cir. 1985) ("[B]y proceeding against the debtor's general estate, it 'omitted' security from its action, and thus, waived its security interest.")

**B. The Trustee Does Not and Cannot Allege Facts that DRMG Committed an "Action" or Violated the Security First Principle.**

The only facts the Trustee alleges concerning DRMG's receipt of the Rents post-petition are that pre-petition, demand letters were sent to the DMV under Sec. 2938, and that the DMV paid funds to DRMG (which are in Mr. Serlin's trust account) post-petition. Therefore, Counterclaims 1 and 2 must fail because the Trustee has not and cannot plead that DRMG received the Rents post-petition pursuant to a judicial action. To quote Wozab, 51 Cal. 3d at 998: "No court had anything to do" with DRMG's post-petition unsolicited receipt of funds from the DMV.

Second, Counterclaims 1 and 2 must fail because the Trustee has not and cannot plead that DRMG violated the security first principle. As noted above, to violate the security first principle the lender must have seized unpledged, general assets of the borrower. Yet the trustee admits in the Counterclaims (at pars. 22 and 33) that the DMV Rents were subject to the security interest of DRMG, and were not general unencumbered estate assets. The Trustee concedes that "up through the filing of the petition," DRMG had a right "to make direct seizure of the rents." Indeed, even if the bankruptcy filing terminated DRMG's direct collection rights and ownership of the Rents due to preemption or some other bankruptcy doctrine (which DRMG disputes), it is undeniable that post-petition, the Rents at least constituted part of DRMG's collateral, thus protecting DRMG from a violation of the security first principle.

Moreover, the Counterclaims contain various misstatements of law (and certainly fail to provide the requisite facts) as to how DRMG violated the one-action rule. For instance, the Trustee makes the wholly unsupported argument that a lender's collection of rents under Sec. 2938 "does not constitute an action" under Sec. 2938(e)(2) "**if and only** if said seizure was authorized" by Sec. 2938(c).[4] The Trustee's argument fails as a matter of law for several reasons.

First and foremost, DRMG **did comply** with Sec. 2938. The Trustee concedes the point by asserting that DRMG violated the Bankruptcy Code, not Sec. 2938. (Counterclaims, pars. 22 and 33.) Therefore, DRMG is entitled to the protection of Sec. 2938(e)(2).

Alternatively, assuming for the sake of argument that DRMG's receipt of the Rents post-petition did not comply with Sec. 2938, the Trustee has pleaded that DRMG (through its predecessor) lawfully sent Sec. 2938 demand letters, but post-petition, collected the funds unlawfully. There was still no court involved (and thus there was no "action") and the Rents – if DRMG did not own them outright -- were at a minimum DRMG's collateral (thus there was no

---

[4] Sec. 2938 states in part: (e) An enforcement action of the type authorized by subdivision (c), and a collection, distribution, or application of rents, issues, or profits by the assignee following an enforcement action of the type authorized by subdivision (c), shall not do any of the following: (2) Constitute an action, render the obligation unenforceable, violate Section 726 of the Code of Civil Procedure, or, other than with respect to marshaling requirements, otherwise limit any rights available to the assignee with respect to its security.

security first violation.) Moreover, the Trustee's "if and only if" language in the Counterclaims is a blatant misstatement of Sec. 2938(e)(2) and is not supported by case law.

The Trustee alleges legal conclusions that DRMG engaged in "coercive activities to collect and misapply money damages." (Counterclaims, pars. 23 and 34). The Trustee fails to identify the "coercive activities." Moreover, the one action rule is not a remedy for coercive activities. It is not a remedy for stay violations. It is a remedy where there is a court action that does not include foreclosure of the realty, or where the lender seeks to recover unpledged assets before resorting to its collateral. As the Trustee has not and cannot allege a violation of either of these principles, the Counterclaims must fail as a matter of law.

### C. The Trustee Has No Legally Cognizable Claim Under Sec. 726(a), Because DRMG's Security Interests in the Realty and Rents are Set Forth in One Recorded Document.

The only way for the Trustee to create a legally cognizable claim as to whether DRMG violated the security first principle would be for the Trustee to allege that DRMG held a lien on the realty but not on the Rents. However (putting aside that DRMG received separate assignments of rents), **the recorded trust deeds themselves** contain assignments of rents. (Complaint, Exs. "E" and "F.")

The Trustee cannot essentially split each of the trust deeds in half. She cannot allege facts (nor has she) that DRMG's security interest against the realty as set forth in each of the trust deeds is valid, but that its security interest against the Rents as set forth in each of the trust deeds is invalid. Therefore, the Trustee cannot state a claim that DRMG violated the security first principle.

### D. Alternatively, Counterclaims 1 and 2 Must Fail Because of the Trustee's On-Going Demand for Return of the Rents.

Even if the Trustee could somehow state a claim for a violation of the one action rule, the one action Counterclaims must fail as a matter of law because the Trustee is simultaneously counterclaiming to recover the Rents. The Trustee cannot on the one hand allege that DRMG somehow elected its remedy, while on the other hand allege that the remedy that DRMG

allegedly elected is not proper and that DRMG must return the Rents. Moreover, if the Court grants the Trustee's Motion to Dismiss on April 1st, DRMG has every intent of returning the Rents to the Trustee, thereby mooting the one action Counterclaims.

The Wozab case is instructive. In Wozab, after the lender exercised the setoff, the borrower demanded that the lender reconvey its trust deed, which the lender did. However, when the lender thereafter sought to obtain a judgment against the borrower, the borrower argued that the lender needed to exhaust its real property collateral first, even though the lender no longer held a lien against the realty. The Supreme Court held that the borrower could not make such "mutually inconsistent" demands. Wozab, 51 Cal. 3d at 1005.

(Similarly, the Trustee contends that DRMG's receipt of the Rents was "void" as in violation of the stay. However, if the receipt of Rents was "void," it has no consequence whatsoever. An activity that is a legal nullity cannot violate the one action rule.)

In sum, the Trustee cannot claim a one action violation at the same she is seeking to recover the collection of the Rents which she alleges triggered the violation.

## VII.
## COUNTERCLAIM NO. 3 (FOR CIVIL CONTEMPT) MUST FAIL BECAUSE THE TRUSTEE HAS NOT PLEADED FACTS THAT ESTABLISH CONTEMPT

In Counterclaim No. 3, the Trustee alleges that DRMG willfully violated the automatic stay by its post-petition "seizure" of the Rents. (Counterclaim pars. 40-41.) The Trustee also alleges that DRMG willfully violated the automatic stay by not turning over the Rents in Mr. Serlin's trust account after "repeated demand for turnover by the Debtor and the [Trustee]." (Counterclaim par. 42.) The Trustee seeks an order of civil contempt against DRMG "and its appropriate agents," which DRMG assumes refers to its counsel (Counterclaims, prayer for relief, par. 3.)

Relief under section 105(a) is discretionary. In re Dyer, 322 F. 3d 1178, 1192 (9th Cir. 2003). A court must find that that the moving party has established, by clear and convincing evidence, that the offending party violated "a specific and definite order of the court." In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002). While a finding of civil contempt typically

requires a finding that the offending party violated a court order, a violation of the automatic stay can result in a civil contempt finding even in the absence of a court order. <u>Dyer</u>, 322 F.3d at 189-90.

Here, a contempt finding against DRMG and/or its counsel would be improper as a matter of law. First and foremost, there was no violation of a "definite order."[5] As detailed in DRMG's Assignment of Rents Brief (Ex. "A" hereto), many courts, including without limitation the Third and Seventh Circuit Courts of Appeals, would find that DRMG owned the Rents post-petition and that the automatic stay did not apply.[6] In contrast, the Trustee's entire argument that the stay was in effect is based on a Texas bankruptcy court's determination that Sec. 541(a)(6) preempts state law rent assignment statutes. <u>In re Amaravathi Ltd. P'ship.</u>, 416 B.R. 618 (Bankr. S.D. Tex. 2009). Thus it can hardly be said that there was a "definite order" that the stay was in effect. <u>See, e.g.</u>, <u>Matter of Coastal Group, Inc.</u>, 100 B.R. 177 (Bankr. D. Del. 1989) (creditor that filed an adversary complaint to collect on a pre-petition claim without first seeking relief from stay did not willfully violate the stay under Sec. 362(a), where there was a "scintilla of evidence," based on the creditor's misinterpretation of a particular published decision from another bankruptcy court, that the creditor did not need to obtain relief from stay.)

Further, the Trustee should be required to make a more definite statement as to how the estate was damaged. As noted herein, at a minimum, the Rents constitute DRMG's cash collateral. Since her appointment, the Trustee has been collecting the DMV rents. She has also been operating under a Court-approved cash collateral budget which allows her to spend the rents generated from the DMV properties for the reasonable and necessary preservation thereof.

---

[5] DRMG does not contend that there had to be a prior written order that its receipt of Rents violated the stay. Rather, to be liable for civil contempt, it had to be definitely clear to any reasonable creditor that the stay precluded collection of the Rents (which it was not).

[6] <u>Matter of Century Investment Fund VII Limited P'ship</u>, 937 F.2d 373, 375 (7th Cir. 1991); <u>Commerce Bank v. Mountain View Village, Inc.</u>, 5 F.3d 34, 36, 39 (3rd Cir. 1993); <u>In re Jason Realty Ltd. P'ship</u>, 59 F.3d 423, 427 (3rd Cir. 1995); <u>In re Woodmere Investors Ltd P'ship</u>, 178 B.R. 346, 360 (Bankr. S.D. N.Y. 1995); <u>In re Mount Pleasant Ltd. P'ship</u>, 144 B.R. 727 (Bankr. W.D. Mich. 1992); <u>In re Northwest Commons, Inc.</u>, 136 B.R. 215, 220 (Bankr. E.D. Mo. 1991); <u>In re South Pointe Associates</u>, 161 B.R. 224 (Bankr. E.D. Mo. 1993); <u>In re Loco Realty Corp.</u>, Case No. 09-11785 (Bankr. S.D.N.Y 2009, not for publication).

The Court-approved expenditures are well within budget.[7] Thus even if DRMG had remitted the funds to the Trustee in response to her February 4, 2011 demand letter, the Rents would be in her or her counsel's trust account pending a resolution of this adversary proceeding. Therefore, this is nothing more than a dispute over who is the proper custodian of the funds in Mr. Serlin's trust account pending this Court's determination of ownership of the Rents. The estate has not and cannot plead even the slightest bit of damages.

Finally, a policy behind allowing damages for stay violations is that a trustee or debtor should not be required to spend its time and resources affirmatively suing the holders of estate property for the recovery thereof. This is precisely why DRMG filed its Complaint. It is clear from the Complaint that the funds are in Mr. Serlin's trust account; that they are being held in trust for whoever owns them; and that upon this Court's determination of ownership, the Rents will be turned over to the owner. In the event the Court determines on April 1st that the estate owns the Rents, the Rents will promptly be remitted to the Trustee, subject, of course, to the Court's existing cash collateral orders regarding the rents.

## VIII.
## COUNTERCLAIM NOS. 4 AND 5 (FOR TURNOVER AND AVOIDANCE OF POST-PETITION TRANSFERS) MUST BE DISMISSED, OR ALTERNATIVELY, THE TRUSTEE SHOULD BE REQUIRED TO MAKE A MORE DEFINITE STATEMENT AS TO COUNTERCLAIM NO. 5

As noted above, DRMG's Complaint moots these two Counterclaims as a matter of law. It is clear from the Complaint that DRMG is seeking a declaration as to who owns the Rents so that the Rents can be returned to their rightful owner when this Court determines who owns them.

Furthermore, in Counterclaim No. 5, the Trustee seeks to avoid and "preserve the transfer for the benefit of the estate." The Trustee should be required to make a more definite statement as to whether such avoidance and preservation includes the avoidance of DRMG's lien in the Rents. Section 549 is intended to return the estate to the position it was in pre-transfer – not to create a windfall for the estate. For instance, where a transfer of real property of the estate is

---

[7] The Court is hereby asked to take judicial notice of the foregoing.

avoided, the estate is only entitled to recover the equity in the property. <u>In re Bean</u>, 252 F. 3d 113, 117 (2nd. Cir. 2001). Therefore, upon turnover of the Rents to the estate, DRMG's security interest in the Rents must remain in place.

## IX.
## CONCLUSION

Based on the foregoing, DRMG respectfully requests that the Court dismiss each of the Counterclaims, or alternatively require a more definite statement, and that the Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

DATED: March 24, 2011

LAW OFFICE OF HOWARD N. MADRIS, A P.C.

By: _____
Howard N. Madris
Counsel for DRMG, LLC