HOWARD N. MADRIS (State Bar No. 157691)
LAW OFFICE OF HOWARD N. MADRIS, A P.C.
424 S. Beverly Drive
Beverly Hills, California 90212
Telephone: (310) 277-0757
Facsimile: (310) 975-6757
hmadris@madrislaw.com

and

MARK A. SERLIN (State Bar No. 122155)
SERLIN & WHITEFORD, LLP
813 F Street, 2d Floor
Sacramento, CA 95814
Telephone: (916) 446-0790
Facsimile: (916) 446-0791
Email: mserlin@globelaw.com

Attorneys for Plaintiff/Cross-Defendant DRMG, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SUPERIOR ACQUISITIONS, INC.,<br><br>       Debtor. | Adv. Proc. No. 11-1034<br><br>Main Case No. 10-13730<br><br>Chapter 11<br><br>**EXHIBIT "A" OF:** |
| DRMG, LLC, a California limited liability company,<br><br>       Plaintiff,<br><br>       v.<br><br>LINDA S. GREEN, solely in her capacity as Chapter 11 Trustee for Superior Acquisitions, Inc.; and SUPERIOR ACQUISITIONS, INC.,<br><br>       Defendants. | **PLAINTIFF/CROSS-DEFENDANT DRMG, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS ALL OF DEFENDANT/CROSS-COMPLAINANT CHAPTER 7 TRUSTEE'S COUNTERCLAIMS PURSUANT FED. R. CIV. PROC 12(B)(6), OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. PROC. 12(E)**<br><br>Date: May 6, 2011<br>Time: 10:00 a.m.<br>Santa Rosa Courtroom |

1

1

2

LINDA S. GREEN, Chapter 11 Trustee of the Estate of Superior Acquisitions, Inc.;

3

Counter-claimant,

4

5

v.

6

DRMG, LLC, a California limited liability company;

7

8

Counter-defendant.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

HOWARD N. MADRIS (State Bar No. 157691)
LAW OFFICE OF HOWARD N. MADRIS, A P.C.
424 S. Beverly Drive
Beverly Hills, California 90212
Telephone: (310) 277-0757
Facsimile: (310) 975-6757
hmadris@madrislaw.com

and

MARK A. SERLIN (State Bar No. 122155)
SERLIN & WHITEFORD, LLP
813 F Street, 2d Floor
Sacramento, CA 95814
Telephone: (916) 446-0790
Facsimile: (916) 446-0791
Email: mserlin@globelaw.com

Attorneys for Plaintiff DRMG, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Adv. Proc. No. 11-1034 |
| | Main Case No. 10-13730 |
| SUPERIOR ACQUISITIONS, INC., | Chapter 11 |
| Debtor. | |
| DRMG, LLC, a California limited liability company, | **OPPOSITION OF DRMG, LLC TO CHAPTER 11 TRUSTEE'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED.R.CIV.PROC 12(B)(6)** |
| Plaintiff, | |
| v. | |
| LINDA S. GREEN, solely in her capacity as Chapter 11 Trustee for Superior Acquisitions, Inc.; and SUPERIOR ACQUISITIONS, INC., | Date: April 1, 2011<br>Time: 9:00 a.m.<br>Santa Rosa Courtroom |
| Defendants. | |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION...........................................................................1

II. ISSUES AND SUMMARY OF ARGUMENT.......................................1

III. LEGAL STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS.........4

IV. BACKGROUND FACTS...............................................................4

V. DRMG OWNED THE RIGHT TO ALL PRESENT AND FUTURE RENTS THE INSTANT BEFORE THE PETITION WAS FILED.................................5

    A.    Following Default and the Taking of an Enforcement Step, the Assignee of an Assignment of Rents Holds a Fundamental Property Entitlement to All Rents and Cash Proceeds Generated by the Underlying Realty.............................................5

    B.    DRMG Acquired Ownership of the Rents Pre-Petition by Enforcing its Rights Under Sec. 2938........................................................................10

VI. THE BANKRUPTCY PETITION DID NOT REVEST DEBTOR WITH OWNERSHIP OF THE RENTS..........................................................................10

    A.    Numerous Courts Have Held that a Bankruptcy Petition Does Not Revest a Debtor with Ownership of Rents, Where the Debtor Was Stripped of the Rents Pre-Petition........................................................................................10

    B.    The Trustee's Reliance on Amaravathi and Several Other Cases is Misplaced. ...........................................................................................13

VII. CONCLUSION.........................................................................17

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                               **Page**

Bank of America v. City & County of San Francisco,
     309 F. 3d 551 (9th Circuit 2002)................................................................14

Bell v. Twombly,
     127 S.C. 1955, 1965 (2007)..........................................................................4

Butner v. United States,
     440 U.S. 48,54-55, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979)...........................Passim

Commerce Bank v. Mountain View Village, Inc.,
     5 F.3d 38 (3rd Cir. 1993)......................................................................9, 12

Integrated Solutions Inc. v. Service Support Specialists, Inc.,
     124 F.3d 487, 493 (3rd Cir. 1997)..........................................................14

In re Amaravathi Ltd. P'ship.,
     416 B.R. 618 (Bankr. S.D. Tex. 2009)...........................................Passim

In re Emery,
     317 F.3d 1064, fn. 3 (9th Cir. 2003)......................................................14

In re Four Bucks, LLC,
     Case No. 09-42629 (Bankr. N.D. Tex. 2009)..................................................13

In re Galvin,
     120 B.R. 767, 771-72 (Bankr. N.D. Vt. 1990).................................................13

In re Gendreau,
     122 F.3d 815, 819 (9th Cir. 1997).........................................................11

In re Goco Realty Fund I,
     151 B.R. 241, 249 n.6 (Bankr. N.D. Cal. 1993)...........................................Passim

Case: 11-01034    Doc# 7    Filed: 03/17/11    Entered: 03/17/11 13:45:45    Page 3 of 22
Case: 11-01034    Doc# 10-1    Filed: 03/24/11    Entered: 03/24/11 15:22:10    Page 5 of 24

In re Jason Realty Ltd. P'ship,
    59 F.3d 423, 427 (3rd Cir. 1995)..................................................................................12, 17

In re Loco Realty Corp.,
    2009 WL 2883050 (Bankr. S.D. N.Y. 6/25/09) (Not for
    Publication)...............................................................................................10, 13, 17

In re Mount Pleasant Ltd. P'ship,
    144 B.R. 727 (Bankr. W.D. Mich. 1992)...................................................Passim

In re Northwest Commons, Inc.,
    136 B.R. 215, 220 (Bankr. E.D. Mo. 1991)..................................................10, 12

In re Pettit,
    217 F.3d 1072 (9th Cir. 2000)..................................................................Passim

In re South Pointe Associates,
    161 B.R. 224 (Bankr. E.D. Mo. 1993)................................................10, 12, 17

In re Ventura-Louise,
    490 Fd.2d 1141 (9th Cir. 1974)........................................................................8

In re Vienna Park Properties,
    976 F.2d 106 (2nd Cir. 1992)..........................................................................15

In re Vill. Props., Ltd.,
    723 F.2d 441, 445 (5th Cir. 1984)..................................................................15

In re Woodmere Investors Ltd P'ship,
    178 B.R. 346, 360 (Bankr. S.D. N.Y. 1995)...........................................9, 12, 17

Matter of Century Investment Fund VII Limited P'ship
    937 F.2d 373, 375 (7th Cir. 1991)..................................................................9, 11

Matter of Wheaton Oaks Office Partners Ltd.,
    27 F.3d 1234 (7th Cir. 1994)..........................................................................15

iii

U.S. v. Whiting Pools, Inc.,

    462 U.S. 198, 204, 103 S.Ct. 2309 (1983)..................................................15, 16, 17

**STATE CASES**

Federal National Mortgage Assn. v. Bugna,

    57 Cal. App. 4th 529 (1997)........................................................................8

MDFC Loan Corp. v. Greenbrier Plaza Partners,

    21 Cal. App. 4th 1045 (1994)......................................................................9

Moore v. Regents of Univ. of Cal.,

    51 Cal.3d 120, 165, 271 Cal.Rptr. 146, 793 P.2d 479 (1990)............................7

**TREATISES**

Miller & Starr,

    California Real Estate 3d, Ch. 10, "Deeds of Trust and Mortgages" (updated October 2010)...............................................................................................2, 6, 7

**FEDERAL STATUTES AND RULES**

11 U.S.C § 541(a)(6).............................................................................Passim

11 U.S.C § 1123(a).......................................................................................14

11 U.S.C. § 541(c)(1)....................................................................................14

11 U.S.C. § 728(b).......................................................................................14

11 U.S.C. § 363(i)........................................................................................14

Fed. Rule 12(b)(6)........................................................................................4

**STATE STATUTES**

Cal.Civ.Code § 654.......................................................................................7

Civil Code Sec. 2938..............................................................................Passim

iv

1 | **TO THE HONORABLE ALAN JAROSLOVSKY, U.S. BANKRUPTCY JUDGE, THE**
2 | **CHAPTER 11 TRUSTEE, DEBTOR, AND ALL OTHER INTERESTED PARTIES:**
3 |
4 | **I.**
5 | **INTRODUCTION**
6 |     DRMG, LLC ("DRMG") hereby files this opposition ("Opposition") to the Motion
7 | ("Motion") to Dismiss Complaint ("Complaint") Pursuant to Fed.R.Civ.Proc 12(b)(6), filed by
8 | the Chapter 11 Trustee ("Trustee"). By its Complaint, DRMG seeks, without limitation, a
9 | declaratory judgment that it owns the ("Rents") generated from two real properties that Debtor,
10 | as owner of the underlying realty, leases to the California Department of Motor Vehicles
11 | ("DMV"). The Rents include over $90,000 that is being preserved in DRMG's co-counsel Mr.
12 | Serlin's trust account, and the right to future Rents. The DMV sent the Rents to DRMG post-
13 | petition (even though DRMG did not solicit the funds) pursuant to statutory demand letters under
14 | Civil Code Sec. 2938 that DRMG's predecessor in interest Umpqua Bank had sent to the two
15 | DMVs pre-petition.[1] [2]
16 | **II.**
17 | **ISSUES AND SUMMARY OF ARGUMENT**
18 |     The Motion is flawed because the Trustee focuses solely on the parties' interests in the
19 | Rents at the inception of the two subject loans and assignments of rents. The Trustee fails to
20 | consider what the parties' rights were **after Debtor defaulted under the loans and DRMG**
21 | **enforced its absolute assignments of rents pre-petition ("Post-Default & Enforcement," or**
22 | **"Post-D&E").**
23 |     The discreet legal issues in this adversary proceeding are thus as follows:
24 |     1. Under California law, the instant before a borrower's bankruptcy petition ("Instant
25 | Before Petition"), who owns the present and future rents owed by the borrower's tenant, where
26 | the borrower is default; and where the borrower's lender holds an "absolute assignment of rents;"
27 |
28 |

---

[1]References to DRMG may include its predecessors in interest.

[2]If the Motion is denied, DRMG will likely forthwith be filing a motion for summary judgment.

1 and where pre-petition, the lender already enforced its rights to collect the rents under Civil Code

2 Sec. 2938, by sending a payment demand letter to the tenant and borrower in accordance with the

3 statute?; and

4    2.  Assuming that the lender owns such rents the Instant Before Petition, does the lender

5 retain such ownership after the borrower's bankruptcy petition?

6    The answer to both questions is YES.

7    With respect to Question #1, DRMG has not found any published case where a court

8 addresses this issue in the context of the current Sec. 2938, which was enacted effective January

9 1, 1997 ("1997 Statute"). However, the Miller & Starr treatise is most instructive. The treatise

10 states that under the 1997 Statute, all assignments of rents are absolute. At the inception of the

11 loan and assignment ("Loan Inception"), the rents are owned by the borrower and are treated as

12 security for the loan.[3] However, the treatise states that **ownership of present and future rents**

13 **shifts from the borrower to the lender**, after both the borrower has defaulted and the lender has

14 taken any one of the "enforcement" steps set forth in Sec. 2938 -- one of which is sending a Sec.

15 2938 demand letter to the tenant and borrower. As the treatise states: "[T]itle to the rents

16 requires enforcement of the assignment in order to obtain a **title** interest in the rents . . ." Miller

17 & Starr, California Real Estate 3d, Ch. 10, "Deeds of Trust and Mortgages" (updated October

18 2010) (hereinafter, "Miller & Starr," or "M&S"), at 10:48 (emphasis added).

19    Controlling Ninth Circuit case law also illustrates the point that pre-petition ownership of

20 rents switches from the borrower to the lender Post-Default & Enforcement. In California,

21 property consists of a bundle of rights. The party who owns the bundle owns the property. If, at

22 the Instant Before Petition, a borrower cannot possess particular funds, or use them, or sell them,

23 or loan them, or give them away, or exclude others from using the funds, then the borrower does

24 not own the bundle and thus does not own the funds. In re Pettit, 217 F.3d 1072 (9th Cir. 2000).

25    That is exactly what happened here. Post-D&E, Debtor did not own the Rents because

26 DRMG's enforcement of its rights (through its predecessor Umpqua) divested Debtor of the

27 _____

28    [3] DRMG uses the phrase "Loan Inception" because typically – as is the case in the Adversary
Proceeding -- the loan, deed of trust and assignment of rents are all executed and recorded in close
proximity to one another.

Case: 11-01034   Doc# 10-1   Filed: 03/24/11   Entered: 03/24/11 15:22:10   Page 9 of 24

1     bundle of rights in the Rents. Case law interpreting prior versions of Sec. 2938 also illustrates

2     the same. Further, the Seventh Circuit Court of Appeals, and various bankruptcy and district

3     courts, have interpreted other states' statutes to provide that where a lender held a security

4     interest in rents pre-default and/or enforcement (depending on the particular state statute), the

5     lender's interest shifted to an ownership interest in the present and future rents post-default

6     and/or enforcement.

7           With respect to Question #2, the bankruptcy did not revest ownership of the Rents in

8     Debtor and render them merely DRMG's cash collateral. Controlling U.S. Supreme Court and

9     Ninth Circuit law is clear that in a bankruptcy case: (a) property rights are determined by state

10    law; and (b) a debtor cannot enhance its property rights by filing for bankruptcy. Moreover, both

11    the Third and Seventh Circuit Courts of Appeals – the only circuits to address the issue – have

12    found that where a rent assignment strips the debtor of rents pre-petition, the bankruptcy estate

13    has no rights to the rents post-petition. If, as DRMG contends, it owned the Rents the Instant

14    Before Petition, the Bankruptcy Code cannot transform DRMG's ownership into a mere post-

15    petition security interest.

16          In this regard, the Trustee's reliance on the case of In re Amaravathi Ltd. P'ship., 416

17    B.R. 618 (Bankr. S.D. Tex. 2009) is misplaced. Sec. 541(a)(6) cannot and does not preempt

18    California's assignment of rents statute because: (a) There is a strong presumption against

19    inferring Congressional intent to preempt state law; (b) Unlike other Bankruptcy Code provisions

20    where Congress expressly states that a Code provision is "notwithstanding any other non-

21    bankruptcy law," there is no indication in Sec. 541(a)6) that Congress intended to preempt state

22    law; (c) Since the adoption of the Bankruptcy Code, the Ninth Circuit and courts within it have

23    addressed prior versions of Sec. 2938, and never applied preemption; and (d) A determination

24    that rents not owned by a lender pre-petition suddenly become property of the estate post-

25    petition, would create absurd results. Further, the Amaravathi Court's arguments – mostly

26    hinging on equitable policy concerns – do not trump a lender's ironclad right to retain property it

27    owned the Instant Before Petition. Controlling case law does not permit such a result.

28

In sum, Post-Default & Enforcement, DRMG has been, and will continue to be, owner of the Rents, notwithstanding Debtor's pending bankruptcy.

## III.
## LEGAL STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS

In considering a motion to dismiss under Rule 12(b)(6), all facts pleaded in the complaint are assumed to be true. Bell v. Twombly, 127 S.C. 1955, 1965 (2007).

## IV.
## BACKGROUND FACTS

DRMG, as successor-in-interest after various loan assignments, holds two recorded Deeds of Trust with absolute assignment of rents provisions contained therein (Complaint, Ex. "D" is for the Fall River Mills property and "E" is for the Lakeport property), as well as a separate "Absolute Assignment of Rents" for each property (Complaints, Exs. "F" and "G").[4]

It is clear that the assignments are absolute and that the loan documents are intended to give DRMG the broadest protections that the law allows. For instance, the Fall River Mills trust deed (Complaint, Ex. "D," at p.1) provides in part: "This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938." "Rights and Remedies Upon Default" (p.5) includes, under the right to "Collect Rents" (p.5), that in the event of default, lender can collect rent directly from tenants. The Lakeport trust deed (Complaint, Ex. "D") affords DRMG identical rights. In addition, the Assignments of Rents (Complaint, Exs. "F" and "G") contain identical provisions.

DRMG has alleged that pre-petition, Debtor defaulted under the loans (pars. 19 & 20); that in or about October of 2009, DRMG's predecessor Umpqua sent out Sec. 2938 demand letters to the DMVs and Debtor, to enforce its rights in present and future Rents (pars. 21 and 22), and that (in addition to receiving rents from the DMV pre-petition), DRMG received Rents post-petition from the DMV. Three quarters of the funds that DRMG received from Debtor Post-Petition were on account of Rents that accrued pre-petition, but which the DMV had not paid due to the state budget crisis. These Rents are all in the trust account of DRMG's co-

---

[4] Evidentiary citations are to the Complaint unless otherwise noted.

1 | counsel Mr. Serlin, who is holding the funds in trust for whomever this Court determines owns
2 | them (pars. 29-32).

**V.**

**DRMG OWNED THE RIGHT TO ALL PRESENT AND FUTURE RENTS THE INSTANT BEFORE THE PETITION WAS FILED**

A.      **Following Default and the Taking of an Enforcement Step, the Assignee of an Assignment of Rents Holds a Fundamental Property Entitlement to All Rents and Cash Proceeds Generated by the Underlying Realty.**

As the Bankruptcy Court for the Northern District of California has commented, "[t]he problem of determining conflicting interests in rents is not new." "The rents issue has plagued the courts for the last century." In re Goco Realty Fund I, 151 B.R. 241, 249 n.6 (Bankr. N.D. Cal. 1993). Much of the confusion arose (and indeed, continues to arise in other states) from a lack of statutory clarity as to what action, if any, a lender must undertake in order to enforce an assignment of rents from its borrower. For instance in Goco, this Court (Judge Morgan) pointed out that there was a distinction under California law between a lender's perfection of a rent assignment and its enforcement of the assignment. (Indeed, the same distinction exists today.) "[P]erfection provides a security interest… In contrast, enforcement of an assignment of rents gives the lender the actual right to collect the rents, causing the lender's interest to become "choate." Goco, 151 B.R. at 248.

The Goco Court found that while the lender had perfected its security interest in the rents (although it later lost the security interest when the funds became comingled), it did not acquire ownership of the rents pre-petition. The Court reasoned that even though the then Sec. 2938 was intended to "strengthen real estate lenders' claims to rent in bankruptcy" (Goco, 151 B.R. 247), the lender had failed to enforce its assignment under the then Sec. 2938 by making a pre-petition, post-default rent demand. Goco, 151 B.R. at 250.

As an end-run around the requirement that lenders enforce their assignments post-default and pre-petition in order to become owners of present and future rents (for instance by seeking the appointment of a receiver or making a Sec. 2938 rent demand on a borrower's tenant),

lenders in California prior to the 1997 Statute, and in other states today, often make an additional argument. They often argue that their assignment of rents occurred at the Loan Inception (when the trust deed and/or assignments of rents were executed), and that therefore an enforcement action was not required because they have **always** owned the rents since the Loan Inception. The problem with this argument is that it belies the economic reality that at the Loan Inception (and indeed at all times pre-default), borrowers typically expect that they own and are entitled to collect and use the rents.

The 1997 Statute (a copy of which is attached hereto as **Ex. "A"**) clarifies the parties' rights at the Loan Inception and Post-Default & Enforcement. "Under the current law, effective January 1, 1997, all assignments are considered as 'absolute.'" Miller & Starr, California Real Estate 3d, Sec. 10:47. (Citations to Miller & Starr are attached as **Ex. "B"**.) However, at the Loan Inception, a lender holding an assignment of rents has a security interest in the rents. Sec. 2938(a). The security interest is fully perfected when the assignment is recorded (i.e. at the Loan Inception). Sec. 2938(b).

Further, the 1997 Statute resolves confusion by detailing various steps that a lender can take to enforce the assignment and become owner of all present and future rents – for instance, by making a post-default rent payment demand on the borrower and tenant, or by obtaining appointment of a receiver, among other expressly enumerated alternative enforcement acts. Civil Code § 2938(c) now provides in pertinent part:

> Upon default of the assignor …assignee shall be entitled to enforce the assignment in accordance with this section. On and after the date the assignee takes one or more of the enforcement steps described in this subdivision, the assignee shall be entitled to collect and receive all rents, issues, and profits that have accrued but remain unpaid and uncollected by the assignor or its agent or for the assignor's benefit on that date, and all rents, issues, and profits that accrue on or after the date. The assignment shall be enforced by one or more of the following:
>
> …
>
> (4) Delivery to the assignor of a written demand for the rents, issues, or profits, a copy of which shall be mailed to all other assignees of record of the leases, rents, issues, and profits of the

> real property at the address for notices provided in the assignment
> or, if none, to the address to which the recorded assignment was to
> be mailed after recording. Moneys received by the assignee
> pursuant to this subdivision, net of amounts paid pursuant to
> subdivision (g), if any, shall be applied by the assignee to the debt
> or otherwise in accordance with the assignment or the promissory
> note, deed of trust, or other instrument evidencing the obligation.

The Miller & Starr treatise makes it clear that a lender's post-default enforcement action transforms it from being the holder of a security interest under Sec. 2938(b), to the owner – the holder of title – to all present and future rents under Sec. 2938(c). As the treatise states: "[T]**itle** to the rents requires enforcement of the assignment in order to obtain a **title** interest in the rents..." (M&S, 10:48) (**Ex. "B"**).

Miller & Starr's interpretation that a lender acquires title to rents Post-Default & Enforcement is consistent with the concept of "property" under California law. The Ninth Circuit undertook precisely this inquiry in a bankruptcy context in the case of <u>In re Pettit</u>, 217 F.3d 1072 (9th Cir. 2000). There, the court had to decide whether or not certain property was property of the estate as of the petition date. The Ninth Circuit first defined "whether and to what extent" the debtor held in the funds on the petition date. The <u>Pettit</u> Court stated:

> Although the question of whether an interest claimed by the debtor
> is "property of the estate" is a federal question to be decided by
> federal law, bankruptcy courts must look to state law to determine
> **whether and to what extent** the debtor has any legal or equitable
> interests in property as of the commencement of the case. <u>See</u>
> <u>Butner v. United States</u>, 440 U.S. 48, 54-55, 99 S. Ct. 914, 59
> L.Ed.2d 136 (1979). Under California law, property is defined as
> "the thing of which there may be ownership." Cal.Civ.Code § 654.
> **"The ownership of a thing is the right of one or more persons**
> **to possess and use it to the exclusion of others."**

<u>Pettit</u>, 217 F.3d at 1078 (emphasis added). The Ninth Circuit found that the debtor did not own the property, stating:

> [T]he Pettits had none of the rights we associated with the legal or
> equitable ownership; **they could not possess the funds, use the**
> **funds, sell the funds, loan the funds, give away the funds,**
> **encumber the funds, or exclude others from using the funds.**
> <u>See</u>, <u>e.g.</u>, <u>Moore v. Regents of Univ. of Cal.</u>, 51 Cal.3d 120, 165,
> 271 Cal.Rptr. 146, 793 P.2d 479 (1990) (noting that "the concept

of property is often said to refer to a bundle of rights that may be exercised with respect to that object-principally the rights to possess the property, to use the property, to exclude others from the property, and to dispose of the property by sale or by gift.").

The <u>Pettit</u> Court began its analysis where DRMG respectfully submits this Court should. Post-Default & Enforcement, Debtor had no rights whatsoever to the Rents. Debtor could not possess the Rents, sell the Rents, loan the Rents, give away the Rents, encumber the Rents, or exclude DRMG from using the Rents. It had none of the bundle of rights that comprise ownership. (Indeed, Debtor was so utterly stripped bare of rights in the Rents Post-Demand & Enforcement, that if the DMV had paid Rents to Debtor, such payment would not discharge the DMV's obligation to pay DRMG. (Sec. 2938(d)(2)).

The only right Debtor held the Instant Before Petition was the right to require DRMG to use the Rents for the reasonable costs of preserving the underlying realty (Sec. 2938(g)(1)).[5]

Courts interpreting prior versions of Sec. 2938 have also concluded that a borrower is stripped of ownership of present and future rents Post-Default & Enforcement. For instance, in the case of <u>In re Ventura-Louise</u>, 490 Fd.2d 1141 (9th Cir. 1974) the Ninth Circuit held that the lender did not own the rents pre-default. However, after default, the lender became owner of the rents and defeated the claim of the bankruptcy trustee. (Although the California statute was thereafter changed as to **how** a lender enforces its right to ownership, the conclusion that a lender becomes owner of the rents Post-Default & Enforcement remains unaltered.) Further, the <u>Goco</u> Court (151 B.R. at 249) would have found that the lender owned the rents the Instant Before Petition, but for the fact that the lender failed to take the necessary enforcement step.

Similarly, in <u>Federal National Mortgage Assn. v. Bugna</u>, 57 Cal. App. 4th 529 (1997), the California Court of Appeals confirmed the necessity of taking a post-default enforcement step to

---

[5] DRMG is prepared to do so, but no such demand has been made.

terminate the borrower's rights to the rents. This finding was based on the legislative history surrounding the enactment of the prior version of Sec. 2938 in 1991. Bugna, 57 Cal. App. 4th at 540-41.

Moreover, in MDFC Loan Corp. v. Greenbrier Plaza Partners, 21 Cal. App. 4th 1045 (1994), the California Court of Appeal held that while the lender did not own the rents upon execution of the rent assignment, it acquired ownership of the rents upon the borrower's default and the lender's enforcement step (the appointment of a receiver). "Once Greenbrier defaulted on the loan, a perfected transfer of the property's income arose in favor of plaintiff, and it sought to enforce the transfer by filing this action and seeking the appointment of the receiver. Thus, plaintiff is entitled to all of the funds held by the receiver when the receivership was terminated." MDFC, 21 Cal. App. 4th at 1052-53.

Notably, outside of California, courts interpreting other states' assignments of rents statutes have found that where a lender obtained a security interest in rents at the Loan Inception (not ownership), the lender became the **owner** of all rents post-default and/or enforcement. Each of these cases is detailed in Section "V" below, because the courts went further and **also** found that the lender's ownership rights in the rents survived post-petition. See, e.g., Matter of Century Investment Fund VII Limited P'ship, 937 F.2d 373, 375 (7th Cir. 1991); Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 36, 39 (3rd Cir. 1993) (the district court held that the lender initially held a security interest that became ownership which survived the petition; the Circuit Court held that the initial interest was an absolute assignment which survived the petition, and stated that it did not need to opine on how it would have ruled had lender's initial interest in the rents been as security); In re Woodmere Investors Ltd P'ship, 178 B.R. 346, 360 (Bankr. S.D. N.Y. 1995); In re Mount Pleasant Ltd. P'ship, 144 B.R. 727 (Bankr. W.D. Mich.

9

Case: 11-01034   Doc# 7   Filed: 03/17/11   Entered: 03/17/11 13:45:45   Page 14 of 22
Case: 11-01034   Doc# 10-1   Filed: 03/24/11   Entered: 03/24/11 15:22:10   Page 16 of 24

1992); In re Northwest Commons, Inc., 136 B.R. 215, 220 (Bankr. E.D. Mo. 1991); In re South Pointe Associates, 161 B.R. 224 (Bankr. E.D. Mo. 1993); and In re Loco Realty Corp., Case No. 09-11785 (Bankr. S.D.N.Y 2009, not for publication) (Loco is attached as **Ex. "C"** hereto).[6]

**B.  DRMG Acquired Ownership of the Rents Pre-Petition by Enforcing its Rights Under Sec. 2938.**

As detailed in the Complaint and summarized above in the Background Facts Section, DRMG was absolutely assigned the Rents pursuant to trust deeds containing assignments, and separate assignments of rents. These loan documents state that they are absolute assignments under Sec. 2938, and they grant DRMG the right to collect rent directly from tenants post-default. As such, DRMG's rights are as broad as a lender's rights are under Sec. 2938: namely, that the Rents were initially DRMG's collateral, until Post-Default & Enforcement, when DRMG acquired ownership of all present and future Rents by enforcing its rights pre-petition in accordance with Sec. 2938. Accordingly, DRMG owned the Rents (including a right to future rents) the Instant Before Petition.[7]

## VI.
## THE BANKRUPTCY PETITION DID NOT REVEST DEBTOR WITH OWNERSHIP OF THE RENTS

**A.  Numerous Courts Have Held that a Bankruptcy Petition Does Not Revest a Debtor with Ownership of Rents, Where the Debtor Was Stripped of the Rents Pre-Petition.**

In a bankruptcy case, to determine who owns property, and more specifically, entitlement to rental payments, one must look to state law. "The essential point is that in a properly administered scheme in which the basic federal rule is that state law governs, the primary reason why any holder of a mortgage may fail to collect rent immediately after default must stem from

---

[6] Although "not for publication," DRMG is not aware of any rule that prohibits citation of Loco herein. Indeed, the case holding was cited (albeit for a point of law not relevant here) in the case of In re YL West 87th Holdings I LLC, 423 B.R. 421, 445 (Bankr. S.D. N.Y. 2010).

[7] The Trustee argues that these loan documents refer to the granting of a "security interest" in the Rents, but ignores that the same documents provide for an absolute assignment of the rents. The loan documents are not internally inconsistent. Indeed, they mirror Sec. 2938. As noted herein, DRMG undeniably had a security interest in the Rents at the Loan Inception. The assignment of ownership of the Rents occurred Post-Default & Enforcement.

Case: 11-01034   Doc# 7   Filed: 03/17/11   Entered: 03/17/11 13:45:45   Page 15 of 22
Case: 11-01034   Doc# 10-1   Filed: 03/24/11   Entered: 03/24/11 15:22:10   Page 17 of 24

10

1  state law." <u>Butner v. United States</u>, 440 U.S. 48, 56-57, 99 S. Ct. 914, 918-19, 59 L.Ed.2d 136

2  (1979).  <u>See also,</u> <u>In re Pettit</u> , 217 F.3d 1072, 1078 (9th Cir. 2000).  Furthermore, "[b]ankruptcy

3  recognizes state property rights, and filing bankruptcy cannot give a debtor a greater interest in

4  an asset than that which he owned pre-bankruptcy."  <u>In re Gendreau</u>, 122 F.3d 815, 819 (9th Cir.

5  1997).

6       Numerous courts have held that where the lender owned the rents the Instant Before

7  Petition (as is the case here), ownership does not revest in the debtor post-petition.[8]  For instance:

8       The Seventh Circuit Court of Appeals has held that under Wisconsin law, where a lender

9  "perfects" its interest in a rent assignment pre-petition, bankruptcy does not revest the debtor

10  with ownership of the rents.  "Perfection" was accomplished under state law by filing a

11  foreclosure action and seeking the appointment of a receiver, thereby changing the lender's

12  security interest in the rents to ownership.

13       '[B]y perfecting its liens under the requirements of state law, then
     those interests do not later become property of the bankruptcy

14  estate.  Once the bankruptcy is filed, the debtor has the right to the
     use of the rental proceeds only if the security interests were not

15  perfected under state law.  When default has occurred prior to the
     bankruptcy petition, as it has herein, the <u>Butner</u> Court has made

16  clear that 'the primary reason why any holder of a mortgage may
     fail to collect rent immediately after default must stem from state

17  law.'

18      <u>Matter of Century Investment Fund VII Limited P'ship</u>, 937 F.2d 373, 375 (7th Cir. 1991)

19  (quoting <u>Butner</u>, 440 U.S. at 57, 99 S.Ct. at 919.)[9]

20

21

22     [8] In some cases the lender initially held a security interest in the rents, and the security interest
     was transformed pre-petition into ownership of the rents, upon default and/or enforcement.  In other cases

23  the lender owned the rents from the Loan Inception.  In Section "V" of this brief, this is a distinction
     without a difference.  Courts are clear that no matter which path the lender took to acquire ownership, as

24  long as the lender owned the rents the Instant Before Petition, the bankruptcy does not revest the debtor
     with ownership.

25

26     [9] The Seventh Circuit's use of the term "perfection" has the effect of "enforcement" under the
     California statute, in that the lender acquired **ownership** of the rents at such time under Wisconsin law,

27  and not merely what one would typically consider a "perfected security interest."  This must be the case,
     because a mere perfected security interest under bankruptcy law would obviously not have cut off the

28  Chapter 11 debtor's right to use the rents (as the rents would merely have constituted the lender's cash
     collateral); yet the Seventh Circuit held that the debtor had no rights whatsoever in the rents.

The Third Circuit Court of Appeals has reached a similar conclusion:

> The stipulated facts conclusively establish that the banks are the holders of mortgages that contain assignments of rents conditioned upon default, that the debtor did default, and that, after notifying the tenants, the banks collected the rents. Under Pennsylvania law, it is clear that the banks were legally entitled to take the steps they did when the debtor was unable to cure the default. Therefore, the rents are not property of the debtor's estate and are not available for use in a plan of reorganization.

Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 36, 39 (3rd Cir. 1993).[10] See also In re Jason Realty Ltd. P'ship, 59 F.3d 423, 427 (3rd Cir. 1995) (holding that the bankruptcy estate had no interest in rents where they were assigned to lender pre-petition upon default, stating: "Our goal must be to ensure that [the lender] is afforded in federal bankruptcy protection the same protection [it] would have under state law if no bankruptcy had ensued.")

Similarly, in the case of In re Northwest Commons, Inc., 136 B.R. 215, 220 (Bankr. E.D. Mo. 1991), the court held that even though Missouri is a "lien theory" state (such that an assignment of rents merely conveys a security interest at the Loan Inception), the lender's enforcement step divested the debtor of any post-petition rights: "When a mortgagee completes all steps necessary to enforce its rights under an assignment of rent clause pre-petition, all interests of the Debtor in the rents are extinguished and the rents do not become property of the estate or cash collateral." Accord, In re South Pointe Associates, 161 B.R. 224 (Bankr. E.D. Mo. 1993).

In the case of In re Woodmere Investors Ltd. P'ship, 178 B.R. 346 (Bankr. S.D.N.Y. 1995), in a detailed and well-reasoned opinion (portions of which are discussed below), the court held that the debtor had no right in rents post-petition because the lender (which initially had a security interest in the rents) had enforced its security interest pre-petition. The court reached the

---

[10] In Commerce, the district court held that at the Loan Inception the lender had a security interest, which became an ownership interest Post-Default & Enforcement, and which, according to the district court, divested the debtor of an interest in the rents post-petition – just as DRMG contends. The Third Circuit reached the same result, but held that the lender's assignment was absolute. The Third Circuit stated that it did not need to address whether its ruling would have differed had it determined that pre-default and enforcement, the lender held a security interest in the rents.

1  same conclusion in the case of In re Mount Pleasant Ltd. P'ship, 144 B.R. 727 (Bankr. W.D.
2  Mich. 1992), a scholarly opinion which is also addressed below.

3      In the case of In re Four Bucks, LLC, Case No. 09-42629 (Bankr. N.D. Tex. 2009) **(Ex.**
4  **"D")**, the court interpreted the same Texas statute as the Amaravathi Court. The Four Bucks
5  Court found that the debtor lost an interest in rents pre-petition. The debtor's subsequent
6  bankruptcy did not change things. "Debtor did not have any interest in the rents from the
7  Property prior to the Petition Date. Therefore, no interest in the rents passed to Debtor's estate
8  and Debtor cannot properly use the rents as cash collateral."

9      Similarly, in the case of In re Galvin, 120 B.R. 767, 771-72 (Bankr. N.D. Vt. 1990), the
10  court found that because the lender owned the rents under state law, the bankruptcy estate had no
11  right to the rents. "Having lost any legal right to the rent, the rent is not property of Debtors'
12  estate."

13      Further, the bankruptcy court concluded that the debtor had no right to post-petition rents
14  in the instructive case of In re Loco Realty Corp., Case No. 09-11785 (Bankr. S.D.N.Y 2009, not
15  for publication) (attached hereto as **Ex. "C"**).[11] There the court stated: "[E]ven if the
16  assignment [of rents] could be construed as a security interest, the Bank took affirmative actions
17  by appointing the receiver on February 23, 2009, before the petition date... Therefore, as of the
18  petition date , the Bank held title to the rents from the property."

19  **B.    The Trustee's Reliance on Amaravathi and Several Other Cases is Misplaced.**

20      The Trustee argues that Bankr. Code Sec. 541(a)(6) (property of the estate includes rents
21  from property of the estate) "preempts any contrary state law." (Motion, at 4:23). The Trustee's
22  preemption argument relies on the holding in the case of In re Amarvathi P'ship, 416 B.R. 618
23  (Bankr. S. D. Tex. 2009).   However, as noted in Paul Rubin Esq.'s article "Absolute
24  Assignments of Rents Survive Filings" (ABI Journal, Feb. 2011 at pgs 50-51) **(Ex. "E")** ("Rubin
25  Article"), the Amaravathi decision is seriously flawed.

26

27  ───────────────────────
[11] Although "not for publication," DRMG is not aware of any rule that prohibits its citation
28  herein. Indeed, the case holding was cited (albeit for a point of law not relevant here) in the case of In re
    YL West 87th Holdings I LLC, 423 B.R. 421, 445 (Bankr. S.D. N.Y. 2010).

First, there is a strong presumption against inferring Congressional intent to preempt state law. See e.g., Bank of America v. City & County of San Francisco, 309 F. 3d 551 (9th Cir. 2002). Moreover, there is a strong presumption against inferring preemption of state law property rights under Sec. 541. Integrated Solutions Inc. v. Service Support Specialists, Inc., 124 F.3d 487, 493 (3rd Cir. 1997). Further, in the case of In re Emery, 317 F.3d 1064, fn. 3 (9th Cir. 2003), the Ninth Circuit cited Goco, a pre-1997 case, for the proposition that under the old statute, a lender could acquire ownership of rents without possession or default. While that may not be the law today, the Ninth Circuit does not seem to have entertained the possibility that Sec. 2938 could be preempted by the Bankruptcy Code; nor did the Goco Court consider it either.)

Second, as noted in Integrated Solutions, 124 F.3rd 487, when Congress intends to displace state non-bankruptcy law, it does so with clear language, such as "notwithstanding any other applicable non-bankruptcy law," or words to that effect, for example in Secs. 1123(a), 541(c)(1), 728(b) and 363(i).

Third, the legislative history does not reflect that Congress intended to preempt the state law property rights of a lender who enforced a rent assignment pre-petition. For instance, Sec. 541(c)(1) includes the phrases "becomes property of the estate . . . notwithstanding any provision . . . in applicable non-bankruptcy law." Sec. 541(a)(6) does not.

Fourth, as the Amaravathi Court (416 B.R. at 624) noted, a court must not follow the plain meaning of a statute if doing so would lead to absurd results. The Rubin Article provides practical examples of absurd results that would arise if "property of the estate" were to include rental income that was owned by a non-debtor party the Instant Before Petition. For instance, where the debtor ("A") leases property to a lessee/sublessor ("B") who leases the same property to a sublessee ("C"), would anyone seriously contend that the rents paid by the sublessee ("C") to the lessee/sublessor ("B") suddenly become the debtor's property upon the bankruptcy filing? Amaravathi mandates such an illogical result. Rubin also provides an example where an entity owns realty as to which it is the ground lessor on a 99 year lease, as to which the ground lessee leases space at the debtor's realty to subtenants. A literal interpretation of Sec. 541(a)(6) would allow the owner of the realty to file bankruptcy and thereby acquire a direct right to collect rents

1 from the subtenants. This would gravely harm the ground lessee (who would have no right to
2 collect rents) and it would also harm the ground lessee's lender, as the ground lessee would be
3 unable to pay its lender debt service. In sum, Sec. 541(a)(6) leads to absurd results if it provides
4 that rents owned by a non-debtor the Instant Before Petition are transferred to the debtor upon
5 the bankruptcy filing, simply because the debtor owns the underlying realty.

6      Amaravathi has other flaws too. First, the holding dismisses Butner by noting that
7 Butner pre-dated the adoption of the 1978 Bankruptcy Code by seven months. The Amaravathi
8 Court notes that while the Fifth Circuit determined that Butner applies to the Bankruptcy Code
9 (In re Vill. Props., Ltd., 723 F.2d 441, 445 (5th Cir. 1984)), that case did not apply Butner to the
10 Bankruptcy Code in the context of a dispute over what constitutes property of the estate.
11 However, as noted above, in Pettit, 217 F.3d 1072, 1078 (2000), the Ninth Circuit held that in
12 determining what constitutes estate property, one must look to Butner.

13      Further, Amaravathi (at p.627) (and the Trustee) rely on two Circuit Court of Appeals
14 cases where the debtors did not even own the rents the Instant Before Petition. For instance, in
15 the case of In re Vienna Park Properties, 976 F.2d 106 (2nd Cir. 1992), the lender merely held a
16 post-petition lien in cash collateral, because it failed to take possession of the rents pre-petition,
17 and thus had failed to enforce its interest. Similarly, Matter of Wheaton Oaks Office Partners
18 Ltd., 27 F.3d 1234 (7th Cir. 1994) is readily distinguishable. In that case, the issue was whether
19 the lender's interest in the rents under Illinois law entitled it to a security interest post-petition
20 (such that the rents would constitute the lender's cash collateral), or whether the lender was
21 unsecured and the rents were general property of the estate under Sec. 541 and the debtor's long-
22 arm powers under Sec. 544. The issue of whether the lender owned the rents outright was not
23 addressed. (Indeed, it is not even clear that Amaravathi Court would concede the point that the
24 lender in Amaravathi owned the rents the Instant Before Petition.)

25      The Amaravathi Court advanced additional flawed arguments. For instance, it stated that
26 the borrower's right to have seized rents applied to reduce its underlying indebtedness created a
27 property right in the rents under U.S. v. Whiting Pools, Inc., 462 U.S. 198, 204, 103 S.Ct. 2309
28 (1983) (a case unrelated to rent assignments), that was sufficient to revest ownership in the

1    borrower post-petition. However, other courts reject this view. For instance, in Commerce

2    Bank, 5 F.3d at 39, the Third Circuit held that "Whiting Pools is distinguishable from the case at

3    hand in that it involved personalty and not real estate." Other courts have distinguished Whiting

4    on other grounds.  For instance, in Mount Pleasant Ltd. P'ship, 144 B.R. at 734, the court issued

5    a scholarly opinion involving two properties. It found that the rents from the "Mount Pleasant"

6    property were merely the lender's cash collateral because the lender did not undertake the

7    requisite pre-petition enforcement step under state law.  However, the lender did enforced its

8    right in the "Resort" rents pre-petition, such that the debtor could not recapture ownership

9    thereof post-petition.

10    The Mount Pleasant Court held that a debtor's potential to reacquire the right to collect

11    rents, in the event the loan were paid off, does not create a sufficient property right under

12    Whiting:

13       The Resort also asserts that it has an equity interest in the rents because if the
         mortgage is satisfied, the right to collect rents will revest in the Resort. This
14       equitable interest, however, is in future rents, not present rents where the
         mortgage is in default... Under this scenario, the rents collected by the mortgagee
15       would remain the mortgagee's property. The mortgagor derives a benefit from the
         payments only to the extent that they are used to reduce his indebtedness.  But the
16       rents accruing after redemption would be the debtor's property because there no
17       longer is any indebtedness for them to secure.

18
         As the illustration demonstrates, once default occurs a role reversal of sorts takes
19       place. The mortgagor now has an "inchoate" right to future rents, based on the
         uncertain possibility that the property will be redeemed and the default will be
20       cured, much like the mortgagee had an "inchoate" interest in rents prior to default.
21       The interest which the mortgagor has does not entitle him to payment of current
         rents even if he realizes on his inchoate right of redemption. These rents have
22       slipped forever from his grasp, and bankruptcy cannot change this fact. To
         interpret Whiting Pools so broadly as to never permit the debtor's rights in rents to
23       terminate would effectively overrule Butner; no matter what state law provided, a
24       mortgagor could never become entitled to receive rent payments once bankruptcy
         intervened.  Given the fact that was Butner was favorably cited by the Supreme
25       Court in United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates,
26       Ltd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), which was decided
         after Whiting Pools, the Court concludes that the Supreme Court did not intend
27       this result.

28

Mount Pleasant, 144 B.R. at 737-738.  See also, the detailed opinion in Woodmere Investors, 178 B.R. at 360 (Whiting not implicated because the debtor's right to recommence collecting rents upon satisfaction of the loan is an equitable interest in future, not present rents. "Whiting Pools only applies when ownership of the seized property has not been transferred.");  Loco Realty, at *10 ("In light of the fact that the Debtor only has an interest in the rents to the extent that the mortgage is ever satisfied, the cash flow from the rents itself until the mortgage is satisfied is not property of the estate and cannot be used by the Debtor to fund a plan");  South Pointe Assoc., 161 B.R. at 227 (debtor's residual right to collect rents after satisfying the loan is not cognizable under Sec. 541 because debtor lacks a right to immediate collection.)

Finally, the Amaravathi Court is concerned that without rents, a debtor cannot survive. Whether this is factually correct in the instant Debtor's case is unclear, as the Debtor owns several other real properties as to which stay relief has not been granted.  In any event, as the Third Circuit stated in Jason Realty, 59 F.3d at 430, "the otherwise worthy desire for achieving a reorganization under Chapter 11 should not trump the rights of an assignee of a lease under a pre-petition assignment."

## VII.
## CONCLUSION

Based on the foregoing, the Court should deny the Motion, and it should grant such other and further relief in DRMG's favor as it deems just and proper.

Respectfully submitted,

DATED: March 17, 2011          LAW OFFICE OF HOWARD N. MADRIS, A P.C.

By: _____
            Howard N. Madris
        Counsel for DRMG, LLC