MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, State Bar No. 83684
JEAN BARNIER, State Bar No. 231683
645 First St. West, Suite D
Sonoma, California 95476
Telephone: (707) 935-3205
Facsimile: (707) 935-7051
Email:    macclaw@macbarlaw.com

Attorneys for Defendant and Counterclaimant
LINDA S. GREEN, CHAPTER 11 TRUSTEE

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SUPERIOR ACQUISITIONS, INC.<br><br>        Debtor.<br>_____<br><br>DMRG, LLC, a California<br>limited liability company;<br><br>        Plaintiff,<br>  v.<br>LINDA S. GREEN, Chapter 11 Trustee of<br>the Estate of Superior Acquisitions, Inc.;<br>SUPERIOR ACQUISITIONS, INC.<br><br>        Defendants<br>_____ | Case No. 10-13730<br>(Chapter 11)<br><br>A.P. No. 11-1034<br><br>**REPLY MEMORANDUM OF POINTS AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.Civ.P. 12(b)(6)**<br><br>Hearing Date: April 1, 2011<br>Time:        9:00 a.m.<br>Santa Rosa Courtroom–Jaroslovsky |

## **INTRODUCTION**

In its strained effort to evade the unequivocal elimination of "absolute" assignment of rents clauses by Civil Code Section 2938, Plaintiff DRMG, LLC has gone far and wide searching for contrary authority – New York, Tennessee, Delaware.

Whatever the rule may be in those jurisdictions, it is quite evident that the only claim DRMG, LLC ever had in the Debtor's rents was a security interest – a security interest subject to

the automatic stay rendering its post petition seizure of rents void. The instant complaint is based on a fundamentally erroneous legal theory and must be dismissed.

## ARGUMENT

### 1. PLAINTIFF'S OWN LEGAL AUTHORITIES DEBUNK THE CONTENTION THAT "ABSOLUTE" ASSIGNMENT OF RENTS CLAUSES VEST OWNERSHIP IN RENTAL INCOME IN CALIFORNIA AS OF THE DATE THE SECURITY INTEREST WAS CREATED

Plaintiff's principal authority is support of its contention that it had outright ownership in the Debtor's **post petition** rental income is a reference to the Miller & Starr treatise. But, in fact, Miller & Starr unequivocally confirm the Trustee's position in this case. 4 Miller & Starr *California Real Estate* (3d Ed.) Section 10.48 states:

> **All assignment of rents create a present security interest.**
> Under former law, the parties could create an absolute assignment by contract, either in terms of the security interest or in a separate document. Under current law, any recorded written assignment of leases, rents, issues, or profits in real property ("assignment of rents") that is secured by real property creates a present security interest in existing and future leases, rents, issues, or profits regardless of whether the assignment is described as absolute, absolute conditioned upon default, additional security, or otherwise. There is no distinction, and no greater rights are created, when the assignment is described as absolute.

The case law discussed in DRMG's opposition either supports the Trustee on this point, or is immaterial. In *In re Goco Realty Fund I,* 151 BR 241 (Bankr. N.D. Cal. 1993) Judge Morgan concluded that the assignment of rents clause simply gave the lender a security interest in the subject income, not "absolute" ownership. Thus she refused to compel the debtor's counsel to disgorge a retainer funded by rental income. That case supports the Trustee, not DRMG. *In re Ventura-Louise,* 490 F.2d 1141 (9th Cir. 1974) was decided over 20 years ***before*** the amendment to Civil Code Section 2938 nullifying "absolute" assignment of rents. *In re Pettit* 217 F.3d 1072 (9th Cir. 2000) involved ERISA protected employee benefit trust funds. The other out-of-state authority or out-of- circuit authority cited by DRMG on this point is immaterial.

## 2. UNDER SETTLED NINTH CIRCUIT AUTHORITY, THE FILING OF THE PETITION FOR RELIEF BARRED DRMG FROM CONVERTING ITS SECURITY INTEREST IN RENTS INTO AN OWNERSHIP INTEREST

DRMG's principal argument in its opposition to the motion to dismiss is that once it *started* its enforcement remedies under the assignment of rents clause *before* the filing of the petition for relief, it immediately became the absolute owner of the rents even though it did not *conclude* its enforcement remedies and actually collect the money until well *after* the filing of the petition for relief.

This is contrary to well-settled Ninth Circuit authority. In the leading case of *Eskanos & Adler v. Leetien,* 309 F.3d 1210, 1214 (9th Cir. 2002) the Ninth Circuit held that creditors have an affirmative duty to cease legitimate prepetition collection activity once a petition for relief is filed, and affirmed a damages award against a law firm which failed to do so, stating at 309 F.#d p. 1214 - 1215:

> ...The scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law. [Citation]. Collection actions maintained in state court threaten the proper execution of bankruptcy proceedings by exposing the debtor's estate to multiple collection actions, undermining the debtor's ability to reorganize her financial affairs, and jeopardizing the creditors as a class with the possibility that one creditor will obtain payment to the detriment of all others. [citation]. **For these reasons we have held that the automatic stay requires an immediate freeze of the status quo by precluding and nullifying post petition actions.**
> ....
> [T]he maintenance of an active collection action alone adequately satisfies the statutory prohibition against "continuation" of judicial action. Consistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, we hold that Section 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions. (Emphasis added).

*Eskanos & Adler* was followed in the lien enforcement context closely applicable to the instant matter in *In re Ozenne,* 337 BR 214 ( 9th Cir. BAP 2006). The debtor in that case had personal property in a storage facility and failed to pay rent. The landlord obtained a prepetition

judgment for possession of the property. The landlord then gave the debtor a valid prepetition notice of the landlord's right to seize and dispose of the personal property remaining in storage unless post eviction storage charges were paid within 15 days. The 15 days lapsed, and the landlord proceeded to dispose of the subject personal property by auction. Prior to the actual auction sale, the debtor filed bankruptcy. Like DMRG in the instant case, the landlord ignored the filing, contending that it was now the owner of the subject goods under state law. The BAP disagreed, and reversed the bankruptcy court for refusing to award damages to the debtor for the willful violation of the automatic stay, stating at p. 220:

> We need not determine whether Dollar's conducting of the sale was the continuation of an action or proceeding against Ozenne (as distinct from the Property) and thus a violation of Section 362(a)(1), for its actions transgressed both Section 362(a)(3), staying "any act to obtain possession of property of the estate or property from the estate, or to exercise control over property of the estate, " and Section 362(a)(4), staying "any act to...enforce a lien against property of the estate."....

*Eskanos* was also followed in *In re Snowden,* 422 BR 737 (Bankr. W.D. Wash 2009), where the bankruptcy court held that a "pay day" loan company holding a prepetition check from debtor wilfully violated the automatic stay by cashing it post-petition.

These authorities establish that unless a secured creditor's lien enforcement is *completed* prior the filing of the petition for relief, the status quo as of the moment of filing is maintained. They further establish the principle that if the creditor obtains some post petition advantage – as DRMG, LLC did here by receipt of post petition rents – it has an affirmative duty to return the money.

Here DRMG had neither title to nor possession of the rental income at issue once the Chapter 11 was filed. It was simply a secured creditor in the midst of exercising its lien enforcement remedies.

DRMG relies heavily on the state court case of *MDFC Loan Corp. v. Greenbrier Plaza Partners,* 21 Cal. App.4th 1045 (1994) in support of the claim that once rents are the hands of a

1  receiver – which did not occur here – ownership vests in the lender.  This non-bankruptcy
2  authority is inapposite.  If this were true in the bankruptcy context, Section 543, which provides
3  for a specific mechanism for turnover of rents collected by a receiver to the Estate, would be
4  meaningless.  In fact, rents and other income collected by receivers under an "assignment of
5  rents" clause are routinely subject to turnover to a bankruptcy estate pursuant to Section 543;
6  see, e.g., *In re Si Yeon Park, Ltd.,* 198 BR 956 (Bankr. C.D. Cal. 1996); *In re Bryant Manor,*
7  *LLC,* 422 BR 278 (Bankr. D. Kan. 2010).

8  Oddly, DRMG cites *Federal National Mortgage Assn. v. Bugna,* 57 Cal.App.4th 529
9  (1997), which involved an "absolute" assignment of rents clause, which the lender enforced
10 through the appointment of a receiver.  In *Bugna*, notwithstanding the "absolute" language in the
11 assignment, the Court of Appeal reversed an order directing a turnover of rents to the lender and
12 instead held that they remained the property of the borrower and must be disbursed back to the
13 borrower.

14 If the theory behind DRMG's complaint was correct, the automatic stay would never bar
15 a nonjudicial foreclosure sale on a prepetition deed of trust.  After all, the borrower conveys his
16 real property "in trust" for the benefit of the lender when the loan is made, correct ?  So,
17 according to DRMG,  the lender already "owns" the real property prepetition, just like DRMG
18 "owned" this Estate's post petition rent collections.   The absurdity of this analogy demonstrates
19 the fallacy of DRMG's position in the instant case.
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

## CONCLUSION

Plaintiff DMRG's complaint seeks an adjudication that it is the outright owner of rental income on which it had a prepetition lien, but it collected post petition. This theory of recovery is contrary to fundamental principles of Title 11. The complaint must be dismissed.

Dated: March 25, 2011						MacConaghy & Barnier, PLC


   /s/ John H. MacConaghy
John H. MacConaghy
Attorneys for Defendant and Counter-claimant
LINDA S. GREEN, CHAPTER 11 TRUSTEE