MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, State Bar No. 83684
JEAN BARNIER, State Bar No. 231683
645 First St. West, Suite D
Sonoma, California 95476
Telephone: (707) 935-3205
Facsimile: (707) 935-7051
Email: macclaw@macbarlaw.com

Attorneys for Defendant and Counterclaimant
LINDA S. GREEN, CHAPTER 11 TRUSTEE

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

SUPERIOR ACQUISITIONS, INC.

      Debtor.

_____

DMRG, LLC, a California
limited liability company;

      Plaintiff,
v.

LINDA S. GREEN, Chapter 11 Trustee of
the Estate of Superior Acquisitions, Inc.;
SUPERIOR ACQUISITIONS, INC.

      Defendants

_____

AND RELATED COUNTERCLAIM
_____

Case No. 10-13730
(Chapter 11)

A.P. No. 11-1034

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM**

Hearing Date: June 24, 2011
Time: 9:00 a.m.
Santa Rosa Courtroom

## INTRODUCTION

The two legitimate issues presented by this Motion are (1) has the Trustee stated a claim for the avoidance post-petition transfers pursuant to Section 549 ? and (2) did the Plaintiff violate CCP Section 726 through an unlawful seizure of rents ? The answer to both questions is "yes."

## **FACTUAL BACKGROUND**

The facts are largely undisputed and generally established by the exhibits attached to the Plaintiff's complaint.

As of the filing of the petition for relief, the Debtor Superior Acquisitions, Inc. owned various real property, including two office buildings located at 43467 Highway 299E, Fall River Mills, CA and 965 Parallel Dr., Lakeport, CA. Both properties were separately rented by the Debtor to the California Department of Motor Vehicles, (*id* p.4:19 -p. 5:6).

The properties were subject to separate prepetition notes secured by first deeds of trust in favor of Umpqua Bank. Concurrently with the deeds of trust, the Debtor executed and recorded an "Assignment of Rents" for each property, (Counterclaim, p. 2:24- p.4:9).

The form "Assignment of Rents" are identical for each loan. The documents state in relevant part:

> "For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property.....
> This is an absolute assignment of Rents made in connection with an obligation secured by property pursuant to California Civil Code section 2938..." (Complaint, Exhibits F and G).

Nearly identical language was contained in the subject deeds of trust, Complaint, Exhibits D & E.

As of October 16, 2009, the Debtor had defaulted on both loans and Umpqua Bank made a direct demand on the State of California for turnover of the rents (Complaint, p. 5:8 - p. 6:2; Exhibit I ). In March of 2010, an entity named "Mobile Asset Group", an affiliate of Plaintiff DRMG, LLC, bought some interest in the two loans from Umpqua Bank. Umpqua Bank executed and recorded an "Assignment of Deed of Trust" to Mobile Asset Group in connection with that transaction (Complaint, Exs. J & K ). Mobile Asset Group later assigned its rights to DRMG, LLC (Complaint, Exs. L & M).

In November of 2010, two months *after* the filing of the petition for relief, the DMV

turned over a total of **$90,800** in back rents to the Plaintiff DRMG, LLC (Counterclaim, p. 4: 16-20). The Plaintiff admits that both the Debtor and the Trustee demanded a turnover of these post petition collections. However, the Plaintiff failed and refused to do so until after the Trustee filed the Counterclaim herein (Counterclaim, p.4:21-22). The Counterclaim was filed on March 3, 2011. On April 4, 2011, Plaintiff DRMG tendered the rent funds in question to the Trustee's counsel with the direction that they be held in counsel's trust account. There they remain.

### NOW THAT THE ESTATE HAS THE RENTS, WHY SHOULD ANYONE CARE ABOUT THE COUNTERCLAIM ?

The Counterclaim contains six claims for relief. The first two claims assert that DRMG's post-petition seizure of the rents violated the "one action rule" set forth in CCP Sections 726 et seq, as to the Lakeport and Fall River Mills DMV building, respectively (Counterclaim, pp. 4-8) . The third claim asserts damages for civil contempt pursuant to Section 105 for violating the automatic stay (Counterclaim, p. 8). The fourth claim asserts turnover of the rents pursuant to Section 542 (Counterclaim, pp. 8- 9), the fifth claim seeks avoidance of the post-petition transfer of the rents pursuant to Section 549 (Counterclaim, p. 9), and the sixth claim seeks an accounting (Counterclaim, pp. 9-10).

Even though DRMG has since voluntarily tendered the sum of $90,918.20 to the Trustee's counsel's trust account, most of the Counterclaim must still be adjudicated. As will be discussed below, this tender does not cure any violation of the "one action rule". It is still important to adjudicate that these rents are "property of the estate", because until that occurs the money must stay in the Trustee's counsel's trust account. And it is important to the Trustee to, not just compel a turnover of rents under 542, but to also obtain an "avoidance" of the transfer under 549, since relief under Section 549 triggers the Estate's rights under Section 551. Section 542 does not.

Given the tender of the funds, the Trustee agrees that the third claim for relief for civil

contempt is now moot and may be dismissed.

### ARGUMENT

**1. THE FIRST AND SECOND CLAIMS FOR RELIEF STATE CAUSES OF ACTION FOR VIOLATION OF THE "ONE ACTION RULE" SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 726 *ET SEQ*.**

Plaintiff DRMG and the Trustee agree on the basic principles of the application of the "one action" rule set forth in C.C.P. Section 726. That is, if a mortgage-holder seizes the property of its borrower, *other than the real property collateral,* without complying with the strict judicial foreclosure procedure, that mortgage holder waives the lien of its deed of trust, *Walker v. Community Bank,* 10 Cal.3d 729, 111 Cal.Rptr. 897 (1974). This much is undisputed. There are two burdens the Trustee must overcome to prevail on her "one action" rule theory.

First, DRMG contends that the "sanction" aspect of the "one action rule" can be triggered only if the secured creditor files a civil "action" against the borrower, other than a judicial foreclosure, and obtains some coercive judicial relief in the process, see Dkt. No. 10, pp. 5-6. This argument is directly contrary to the California Supreme Court's holding in the famous case of *Security Pacific Bank v. Wozab,* 51 Cal.3d 991, 275 Cal.Rptr. 201 (1990), which held that *any* "self help" remedy employed by a mortgage holder – in that case the assertion of a banker's lien on a deposit account – which violated the "security first" principles of the one-action rule triggered a loss of the security. Thus, it was not necessary for DRMG to sue the Debor on a complaint for money in order to violate the "one action" rule. Seizure of the rents was enough .

Second, DRMG correctly notes that it had a valid security interest in the DMV rents. It contends that it was completely insulated from liability by California Civil Code Section 2938. Section 2938(c) provides that on default of a note secured by a deed of trust and assignment of rents, the lender may make direct demand on the tenant for turnover. Section 2938(e)(2) provides:

> An enforcement action of the type authorized by subdivision (c), and a collection, distribution, or application of rents, issues or profits by the assignee following an enforcement action of the type authorized by subdivision (c), shall not do any of the following:
> (2) Constitute an action, render the obligation unenforceable, violate Section 726 of the Code of Civil Procedure, or, other than with respect to marshaling requirements, otherwise limit any rights available to the assignee with respect to its security.

Obviously, DRMG's enforcement of its Assignment of Rents rights in the absence of a bankruptcy filing would be subject to "safe harbor" protection by this statute. However, this is because out-of-bankruptcy enforcement is "...authorized by subdivision (c)...." Once the Debtor filed its Chapter 11 case on September 28 the enforcement of any and all state law enforcement remedies was **not** "authorized." Such acts were and are legally void under well settled authority, *In re Schwartz,* 954 F.2d 569 (9th Cir. 1992). DRMG, LLC's seizure and retention of these rent funds was not privileged, and it violated the one action rule.

The fact that DRMG tendered the rent fund to the Trustee's counsel some six months after their seizure does not cure the violation of the "one action rule". *Wozab, supra,* at 51 Cal. 3d p. 1001, ftn 8 held that a violation of the "one action rule" could be reversed if the lender returned the funds "promptly." But under no stretch of the imagination should six months be considered "prompt."

### 2. THE FOURTH CLAIM FOR RELIEF STATES A CAUSE OF ACTION FOR TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO SECTION 542

Bankruptcy Code Section 542 permits a trustee to compel turnover of "property of the estate" in a possession of a third party.

The rents held by DRMG at the time of the filing of the Counterclaim are "property of the estate." Section 541(a)(6) expressly provides that "property of the estate" includes, "Proceeds, product, offspring, **rents,** or profits of or from property of the estate..." In connection with the Trustee's Motion to Dismiss the Complaint now under submission, the Trustee has

already briefed at length the question of whether the "absolute assignment" language of the loan documents conferred an ownership interest vs. just a security interest in these rents, see Docket Nos. 4 & 12. The Trustee incorporates those arguments here.

Although DRMG has since tendered the rents to the Trustee's counsel, it still asserts a possessory claim on the monies, since it has directed that the funds be held in the Trustee's counsel's client trust account and not disbursed absent further order of court, see attached Declaration of John H. MacConaghy, Ex. 1. It is therefore necessary and appropriate to adjudicate the Trustee's right to these monies pursuant to Section 542.

### 3. THE FIFTH CLAIM FOR RELIEF STATES A CAUSE OF ACTION FOR AVOIDANCE OF POST-PETITION TRANSFERS PURSUANT TO SECTION 549

#### A. <u>In General</u>

Section 549 permits the Trustee to "...avoid a transfer of property of the estate – that (1)...occurs after the commencement of the case and (2)...is not authorized by the court. This simple statute has four elements: (1) a transfer, (2) of property of the estate, (3) post petition and (4) unauthorized. The Trustee has already established that the rents were "property of th estate".

#### B. The Collection of Rents By Plaintiff was a "Transfer"

The second element required for relief under Section 549 is the showing of a "transfer". Bankruptcy Code Section 101(54) defines "transfer" as follows:

> The term "transfer" means --
> (A) the creation of a lien;
> **(B) the retention of title as a security interest**;
> (C) the foreclosure of a debtor's equity of redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or **involuntary**, of disposing of or parting with (i) property; or (ii) an interest in property.(Emphasis added).

Under the express terms of Section 101(54) the very broad definition of "transfer" includes both non-consensual transfers, *In re Straightline Investments, Inc,* 525 F.3d 870, 877

(9th Cir. 2008); and a passive relinquishment of an asset by the debtor, *In re Telligent, Inc.,* 325 BR 134 (Bankr. S.D.N.Y. 2005). Plaintiff's DRMG seizure and acceptance of the rents from the DMV buildings clearly falls within the definition of "transfer" set forth in Section 101(54).

### C. The "Transfer" to Plaintiff was not Authorized by the Court

No serious argument can be made that the Plaintiff had the express authorization of this Court to seize and retain the DMV rents. The record in the Main Case is devoid of any such authority.

Nor can it be argued that the seizure of rents was in the ordinary course of business so as to bring it within Section 363(c). This argument was rejected in the closely comparable case of *In re Straightline Investments, Inc, supra,* affirming a decision of this Court. 525 F.3d 870 *Straightline* involved a factoring relationship between the debtor and a third party. "Factoring" is a type of receivables financing where the factor is "sold" accounts receivable of a borrower, typically collects them in a "lock box", then often doles some of the money back to the borrower. In *Straightline,* the factor seized the debtor's receivables post- petition without express court authority, but contended that no such authority was necessary because the transaction was within the "ordinary course of business". Both this Court and the Ninth Circuit disagreed and held for the bankruptcy estate on its Section 549 cause of action. The only difference between *Straightline* and the instant matter is that the instant case involves real property rents rather than trade receivables.

### D. The "Transfer" Occurred Post-petition

The final issue is whether this "transfer" occurred post-petition. It is undisputed that the State of California The Trustee contends that, since the State of California Plaintiff DRMG strenuously argues that any "transfer" of the rents occured when the Debtor executed the two "Assignment of Rents" agreements; or, at the latest, in October, 2009 [around one year before the petition date], when its predecessor Umpqua Bank made written demand on the State of

California for the turnover.

This argument ignores established authority, in *In re Rainbow Music, Inc.,* 154 BR 559, 561 (Bankr. N.D. Cal. 1993) Judge Tchaikovsky considered this issue and held that, for the purposes of Section 549, a post petition transfer by check is deemed made when the check is entered by the drawee's bank. *Rainbow Music* was cited by approval by the Ninth Circuit in *In re Mora,* 199 F.3d 1024 (9th Cir. 1999).

Here, although we do not yet have the bank records of DRMG, its own Complaint admits that the rent check from the DMV was not tendered until November, 2010, at least 45 days after the filing of the petition for relief. Obviously, it was not honored until after that time. That is the date the transfer is deemed made for the purposes of Section 549.

## **CONCLUSION**

DMRG created a number of problems for itself by its aggressive, unlawful employment of post-petition "self help" remedies. The Trustee has asserted valid claims to enforce the Estate's rights in that connection. The Motion to Dismiss the Counterclaim should be denied.

Dated: June 10, 2011　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　MacConaghy & Barnier, PLC


　　　　　　　　　　　　　　　　　　　/s/ JohnH. MacConaghy
　　　　　　　　　　　　　　　　　　　John H. MacConaghy
　　　　　　　　　　　　　　　　　　　Attorneys for Defendant and Counter-claimant
　　　　　　　　　　　　　　　　　　　LINDA S. GREEN, CHAPTER 11 TRUSTEE